```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------X

United States of America,

                                           07-CR-00187 (CPS)
    - against -

Dwight Brooks,                             MEMORANDUM OPINION
                                           AND ORDER
                Defendant.

-------------------------------------X
```

On July 17, 2007, defendant Dwight Brooks ("Brooks") pleaded guilty to a felon in possession of a firearm charge in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). On March 3, 2008, defendant was sentenced to 37 months imprisonment and 3 years supervised release. Presently before this Court is defendant's motion for a reduction in his sentence pursuant to Federal Rule of Criminal Procedure 35. For the reasons set forth below defendant's motion is granted.

**Background**

The following facts are drawn from the parties' papers submitted in connection with this motion as well as the record of the prior proceedings before the undersigned.

On March 1, 2007, defendant was arrested by the New York City Police Department ("NYPD") at his residence. While in NYPD custody, agents with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") learned that defendant had a prior felony conviction in Kings County Supreme Court in Brooklyn, New York.

On March 2, 2007, ATF agents arrested defendant for the instant offense. Thereafter, defendant was detained at the Metropolitan Detention Center ("MDC").

In May 2007, the NYPD learned that defendant's friend was murdered and that defendant was the subject of a death threat posted to a website by individuals who claimed to be responsible for the friend's death. The NYPD passed this information on to the United States Attorney's Office, which in turn, informed the Bureau of Prisons ("BOP") and defense counsel. Thereafter, the BOP determined that defendant should be placed in protective custody and transferred to the Special Housing Unit ("SHU") of the MDC.

According to the government, defendant rebuffed the BOP's request to speak with him in order to evaluate the threat. Defendant states that he was not concerned for his own safety and thought that the posting was a prank. Defendant states that once he was transferred to the SHU, he filled out 'remedy forms' so that he could be released into the general population, but that he received no response from BOP officials.

While defendant was in the SHU, he was not permitted religious or family visits and was only permitted one telephone call per month. He states that the cell which he was restricted to for twenty-three hours a day was unsanitary and the food he was served was substandard, leading him to lose twenty pounds,

develop kidney stones, and take medication for his stomach. He states that solitary confinement was the equivalent of 'no touch torture,' was stressful, depressing, and has caused him to suffer from memory loss.

On July 17, 2007, defendant pleaded guilty to one count of felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).

On March 3, 2008, defendant was sentenced. At defendant's sentencing, I adopted the Probation Department's pre-sentence investigation report without change. Defendant was found to have a base offense level of 20 based on his prior felony conviction for a crime of violence (conviction of attempted robbery in the second degree on January 27, 2003 in Kings County Supreme Court). After a three-point reduction for the acceptance of responsibility, defendant's total offense level was 17. With a criminal history category of IV, the advisory guidelines sentencing range was 37 to 46 months. I sentenced defendant to 37 months imprisonment and 3 years supervised release.

Later that day, defendant wrote a letter to the Court stating that he had forgotten to mention at the time of his sentencing that he had been housed in the SHU for nearly a year.

On March 26, 2008, a status conference was held during which the government explained the reason for defendant's SHU placement. March 26, 2008 Status Conference Transcript ("Tr.")

at 3. At the status conference, I instructed defense counsel to confer with defendant and confirm whether defendant would like his letter to be construed as a Rule 35 motion. Tr. at 5.

Shortly after his sentencing, defendant was transferred from the MDC to United States Penitentiary (USP), McCreary, Kentucky.

On June 3, 2008, defense counsel filed a Rule 35 motion for a reduction in defendant's sentence based on the conditions of confinement in the SHU.

**Discussion**

*Rule 35 Standard*

Federal Rule of Criminal Procedure 35 states that "[w]ithin 7 days after sentencing, the court may correct a sentence that resulted from arithmetical, technical, or other clear error." Fed. R. Crim. P. 35(a).[1] "The rule . . . is intended to be very narrow and to extend only to those cases in which an obvious error or mistake has occurred in the sentence, that is, errors which would almost certainly result in a remand of the case to the trial court for further action . . ." *U.S. v. Donoso*, 521 F.3d 144 (2d Cir. 2008)(internal quotation marks and citation omitted). Rule 35 does not authorize a re-sentencing that "represent[s] nothing more than a district court's change of heart as to the appropriateness of the sentence[.]" *U.S. v.*

---

[1] At the March 26, 2008 status conference, I informed the parties that I would consider a Rule 35 motion as timely based on defendant's March 3, 2008 letter. Tr. at 5.

*Abreu-Cabrera*, 64 F.3d 67, 72 (2d Cir. 1995).

*Downward Departure on Account of Pre-Sentence Confinement Conditions*

"[P]re-sentence confinement conditions may in appropriate cases be a permissible basis for downward departures." *U.S. v. Carty,* 264 F.3d 191, 196 (2d Cir. 2001); *see also U.S. v. Francis*, 129 F.Supp.2d 612, 616-19 (S.D.N.Y. 2001)(granting downward departure to defendant who spent thirteen and one-half months in a state facility where defendant was subjected to "substandard conditions"). Several district courts in this Circuit have held that downward departures are appropriate "where the conditions in question are extreme to an exceptional degree and their severity falls upon the defendant in some highly unique or disproportionate manner." *U.S. v. Mateo*, 299 F.Supp.2d 201, 208 (S.D.N.Y. 2004)(citing cases and granting downward departure to a defendant who was subjected to sexual harassment by a prison guard and the birth of a child without medical attention at the MDC); *U.S. v. Teyer*, 322 F.Supp.2d 359, 377 (S.D.N.Y. 2004)(declining to grant downward departure to a defendant who spent ten months incarcerated in Belize); *see also Rickenbacker v. U.S.*, 365 F.Supp.2d 347, 351 (E.D.N.Y. 2005)(rejecting petitioner's ineffective assistance of counsel claim raised in a 28 U.S.C. § 2255 petition because defense counsel acted appropriately when he did not move for a downward departure based on defendant's allegations that she "was served food that she

perceived that rodents had gained access to and was not provided with a fully stocked library" while incarcerated in a state facility).

*Defendant's Motion*

Defendant argues that his sentence was the result of clear error because it did not take into account the conditions of pre-sentence confinement.[2] Because the conditions of a defendant's pre-sentence confinement may warrant a downward departure, *see Carty,* 264 F.3d at 196, and the Court was not made aware of defendant's conditions of confinement, I conclude that it was clear error under Rule 35 not to have taken into account defendant's circumstances at the time of sentencing.[3] Therefore, I consider the conditions of defendant's confinement.[4]

---

[2] Defendant notes that the Probation Department's pre-sentence investigation report failed to mention his nearly year-long SHU confinement. The pre-sentence investigation report includes a section on defendant's mental and emotional health. Defendant was interviewed in connection with the report and had the opportunity to raise the conditions of confinement and its impact on his mental health during the interview. Rather than explaining his failure to raise these issues with the Probation Officer, defendant now blames the Probation Department for not mentioning his SHU confinement in its report. The Court need not dwell on the reason for the absence of this information in the report since it has no bearing on the instant motion. What matters is the fact that the Court was not aware of the nature of defendant's conditions of confinement at the time of sentencing.

[3] This case is distinguishable from *Abreu-Cabrera*, as the facts underlying defendant's motion were not known to this Court at the time of sentencing. Accordingly, reviewing defendant's motion pursuant to Rule 35 does not represent a "change of heart" on the part of this Court. *Abreu-Cabrera,* 64 F.3d at 72.

[4] Defendant also argues that the Court should consider his motion pursuant to Fed. R. Crim. P. 32 because his failure to inform the Court about his SHU placement was due to the memory loss caused by the conditions of confinement. Rule 32 requires the sentencing court "to permit the defendant to speak or present any information to mitigate the sentence[.]" Fed. R. Crim. P. 32(i)(4)(A)(ii). "Resentencing is generally required if a court does not comply with the requirements of Rule 32." *U.S. v. Margiotti*, 85 F.3d 100,

Defendant argues that the conditions he suffered were dramatically harsher than the conditions of imprisonment for the general population at the MDC.

> [A]n inmate housed in administrative detention [is to be provided with] the same general privileges given to inmates in the general population. . . [I]nstitutions shall provide commissary privileges and reasonable amounts of personal property. . . The Warden shall give an inmate in administrative detention visiting, telephone, and correspondence privileges...

Bureau of Prisons Policy, Inmate Discipline and Special Housing Units, § 5270.07, ch. 9, p. 9. "Ordinarily, an inmate retains visiting privileges while in detention or segregation status." Bureau of Prisons Policy, Visiting Regulations, § 5267.07, p. 11. Unless a telephone restriction is imposed, inmates have up to 300 minutes of calling time per month. Bureau of Prisons Policy, Inmate Telephone Regulations, § 5264.08, p. 9. "Inmates with telephone restrictions are still entitled to place at least one telephone call per month[.]" *Id.* p. 14.

Moreover, when administrative detention continues beyond 30 days, the BOP is required to conduct

> a psychiatric or psychological assessment, including a personal interview. . . Staff shall conduct a similar . . . assessment and report at subsequent one-month intervals should detention continue for this extended period. . . .

---

103 (2d Cir. 1996)(citing *U.S. v. Axelrod*, 48 F.3d 72, 72-73 (2d Cir.1995)).
   Here, defendant was provided with a meaningful opportunity to address the court prior to imposition of his sentence and defendant has not otherwise identified any defects that would require re-sentencing. While the court sympathizes with defendant's explanation for not raising the issue at sentencing, the court complied with its Rule 32 obligations. Accordingly, Rule 32 does not authorize defendant's re-sentencing.

>The [BOP] shall release an inmate from administrative detention when reasons for placement cease to exist.

Bureau of Prisons Policy, Inmate Discipline and Special Housing Units, § 5270.07, Chapter 9, p. 8A.

Here, defendant was appropriately placed in the SHU based on the alleged threats to his life, although defendant had not engaged in any conduct warranting his segregation. However, no explanation has been provided for the length of defendant's SHU detention. Even though the defendant did not cooperate with the BOP at the time of placement, the BOP still had an obligation periodically to review the basis for defendant's SHU detention. *See* Bureau of Prisons Policy § 5270.07. Based on the record before this Court, it appears that no such review was undertaken at any point in time and defendant was subjected to an exceptionally long period of SHU detention without periodic assessment of his psychological well-being.

Having reviewed BOP policy and crediting defendant's statements about the conditions of his confinement,[5] I conclude that the restrictions placed on him were severe relative to the conditions of confinement for the general population at the MDC. For approximately ten months, defendant was confined to his cell for 23 hours a day, only permitted one hour per day of outdoor

---

[5] The Court credits defendant's description of the conditions of confinement since at the July 17, 2008 proceeding before the undersigned, the government stated that it does not dispute the facts that defendant has presented. July 17, 2008 Transcript at 6-8.

exercise in a cage, had no contact with other inmates, and had restricted commissary, family and religious visiting, and telephone privileges even though he had not committed a disciplinary infraction.

While the extent of defendant's physical deterioration may not have been extreme, the impact on his mental health has been severe. Defendant's descriptions of the negative psychological consequences he has suffered comport with cases and studies addressing the harsh impact that prolonged solitary confinement may have on an inmate's mental health. *See, e.g.*, *McClary v. Kelly*, 4 F.Supp.2d 195, 208 (W.D.N.Y. 1998)(citing cases discussing the negative psychological impact on inmates who are subject to prolonged periods of solitary confinement); *see also The Istanbul Statement on the Use and Effects of Solitary Confinement,* Torture, Vol. 18, No. 1, 2008, 64 ("[S]olitary confinement may cause serious psychological . . . ill effects"), Defendant's Exhibit C; *The SHU Syndrome and Community Mental Health*, American Association of Community Psychiatrists Newsletter, Summer 1998, *available at* http://www.wpic.pitt.edu/aacp/Vol-12-3/shu.html (last accessed on September 2, 2008), Defendant's Exhibit D.

Given the length and nature of defendant's confinement in the SHU, I conclude that the conditions defendant suffered were severe and fell upon him in a disproportionate manner relative to

the MDC general population. Accordingly, defendant's motion is granted and the term of imprisonment to which he was originally sentenced is reduced by six months, from 37 months to 31 months imprisonment. All other terms of defendant's original sentence, including the conditions of his supervised release, remain unchanged.

## Conclusion

For the reasons set forth below, defendant's motion is granted. The Clerk is hereby directed to transmit a copy of the within to the parties.

SO ORDERED.

Dated: Brooklyn, NY

October 22, 2008

By: /s/ Charles P. Sifton (electronically signed)
United States District Judge